## Morse *vs.* Hovey and others.

The voluntary provisions of the bankrupt act of the United States, passed in 1841, are not unconstitutional.

A discharge of a bankrupt, in conformity to such provisions, is valid as respects pre-existing debts, as well as debts contracted by the bankrupt subsequent to the passage of that act.

Where a defendant in a suit at law has a defence of usury, which he can establish, by a competent witness, without a discovery from the alleged usurer, but where he is so situated that he cannot avail himself of the testimony of that witness in the suit at law, he may resort to the court of chancery for relief. And he is not bound to rely upon the testimony of the real plaintiff in the suit at law to prove the usury.

Where several persons who are made defendants, in the court of chancery, have no joint and common interest, so that the answer of one will not be evidence for or against the other upon the hearing of the cause, the complainant may waive an answer on oath as to one of them, and may call for a sworn answer and a discovery from the other.

This was an appeal from a decretal order of the assistant vice chancellor, overruling a demurrer to the complainant's bill. The facts of the case, and the opinion of the assistant vice chancellor, will be found in the report of the case before him. (1 *Sand. Ch. Rep.* 188.)

*T. Jenkins*, for the appellants.

*G. F. Comstock*, for the respondent.

The Chancellor. I concur in the opinion of the majority of the justices of the supreme court, as expressed in the case of *Kunzler* v. *Kohaus*, (5 *Hill's Rep.* 317,) that the voluntary provisions of the late bankrupt act were not unconstitutional; and that the discharge of a bankrupt, in conformity to such provisions, is valid as to pre-existing debts, as well as to debts contracted by him subsequent to the passage of that act. The federal constitution prohibits the states from passing any laws impairing the obligation of contracts. And congress has no such power, either as to previous or future contracts, except what is given to it in the constitution itself, in express terms or by necessary implication. But the power to establish uniform laws on

the subject of bankruptcies throughout the United States, is expressly given to congress. And I think the framers of the constitution did not intend to limit the power to any particular class of persons; or to confine it to cases where a creditor, either nominally or in fact, was the party who instituted proceedings for the discharge of the bankrupt, or for the distribution of his property or effects among his creditors. It is true, that at the time of the adoption of the constitution of the United States there was a bankrupt law, in England, which only allowed a privileged class to be discharged from their debts, with the consent of a part of their creditors. And to entitle a bankrupt belonging to that class to the benefit of a discharge, or to compel him to give up his property for the payment of all his creditors equally, it was necessary that the proceeding should be instituted, at least nominally, by a creditor who had a debt against the bankrupt of not less than a certain specified amount. But this state had at that time a law in existence, which entitled the bankrupt to a discharge on his own application, in conjunction with a portion of his creditors, upon a surrender of his property. And the same law authorized a compulsory proceeding against him to compel a surrender of his property, with the consent of a part of his creditors only; provided he was a trader and had committed an act of bankruptcy by remaining in prison upon execution in a civil suit. That law also applied to pre-existing debts as well as to those which should be contracted afterwards. And probably most of the states which then constituted the confederation, had laws which authorized the discharge of a bankrupt debtor, with the consent of a portion of his creditors, upon a voluntary surrender of his property on his own application. It was undoubtedly in reference to the state of American legislation on the subject, and not to the principles of the English bankrupt law, that these provisions of the constitution, depriving the states of the power to impair the validity of contracts, but giving to congress the power to do so by establishing uniform laws on the subject of bankruptcy, were adopted. Mr. Justice Cowen has shown that, at the time of the adoption of the constitution, the word bankrupt, in its ordinary acceptation, was not confined to

Morse *v.* Hovey.

that class of insolvent debtors who had been guilty of some improper act, to defraud their creditors, or to delay them in the collection of their debts; but that it also was applied to those who, by misfortune, were unable to pay. Nor was it confined to those who were proceeded against adversely by their creditors, to compel a surrender of their property so that it might be applied to the payment of their debts. It may also be proper to remark, that in some of the acts of sederunt in Scotland, the term bankrupt is applied to insolvent debtors who apply, as against their creditors, for the benefit of a decree of *cessio bonorum*, to exempt them from further molestation on account of their debts while they remain insolvent. Thus the act of the 18th of July, 1688, declares that "in time coming when a *bankrupt* shall raise a process of *cessio bonorum*, against his creditors," &c. (1 *Acts of Sederunt*, 181.)

The assistant vice chancellor was right, in this case, in supposing that the discharge of the principal debtor, under the bankrupt act, exempted him from future liability to the complainants, as his sureties, in case they shall hereafter be compelled to pay the debt for which the proceeding at law was instituted. Nor does the fact that the plaintiff in the suit at law has taken issue there upon his plea of discharge under the general bankrupt law, render him a necessary party here; or preclude him from being a witness in this court to establish the fact of usury. The bill shows that Thayer, the principal debtor, was legally discharged under the bankrupt act; and that the issue was taken upon his plea, for the mere purpose of preventing him from being a witness for his co-defendant, in the action at law. Upon this demurrer those allegations in the bill are to be taken to be true. And if so, Thayer has a perfect defence to that suit, and is not interested in establishing the fact of usury here, to exempt himself from a recovery by the plaintiff in the suit at law. I also concur in the opinion of the assistant vice chancellor, that if the complainant can establish this defence of usury by a competent witness, without a discovery from the alleged usurer, but is so situated that he cannot avail himself of the testimony of that witness in the suit at law, he may resort to this court for

Morse v. Hovey.

relief. And he is not bound to rely upon the evidence of the real plaintiff in the suit at law, who is directly interested to prevent the establishment of a defence.

It only remains to consider the question whether the complainants were authorized, in this case, to waive an answer on oath as to one of these defendants, and to call for a sworn answer and a discovery from the other. Where the defendants have no joint and common interest, so that the answer of one would not be evidence for or against the other upon the hearing of the cause, there can be no valid objection to a waiver of a sworn answer as to one defendant and not as to the other. And so this court decided in the case of *Bulkeley* v. *Van Wyck*, (5 *Paige's Rep.* 536.) Here, if the allegations in the bill are true, the defendant Cloyes has no interest in the subject matter of the suit, in the court of law, to recover the amount of the note. And that fact being admitted by the demurrer, the objection that an answer on oath from the actual plaintiff in that suit, and the only real defendant here, is waived, while a sworn answer from the nominal plaintiff is required, does not appear to be well taken by such demurrer. It is not necessary now to consider whether any discovery or admission which may be made in a separate answer of Cloyes can be used as evidence against his co-defendant for any purpose; or what would be the effect of a joint answer of these defendants, put in upon the oaths of both. These are questions which will more properly arise upon the hearing of the cause upon the pleading and proofs.

The decretal order appealed from is affirmed with costs. And the defendants must file and serve their answers within twenty days after service of a copy of the decree of affirmance.